## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DYRA SMITH, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| LEXISNEXIS RISK SOLUTIONS, INC., | |
| Defendant. | |

## COMPLAINT – CLASS ACTION

Plaintiff Dyra Smith ("Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, brings this Class Action Complaint against LexisNexis Risk Solutions, Inc. ("Defendant"). Except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge, the following allegations are made upon information and belief and the investigation of counsel.

## NATURE OF THE ACTION

1.      Plaintiff and the proposed Class Members bring this class action on behalf of all individuals who entrusted Defendant with sensitive Personally Identifiable Information ("PII" or "Private Information") that was compromised in a data breach publicly disclosed by Defendant in May 2025 (the "Data

Breach").

2.      Plaintiff's claims arise from Defendant's failure to adequately secure and protect the Private Information entrusted to it, along with its corresponding duty to properly store and transmit that information.

3.      Defendant is a data analytics provider that offers customers solutions to manage risk, make better decisions, and improve operations across various industries.[1]

4.      Defendant owed numerous statutory, regulatory, contractual, and common law duties—including those arising from its affirmative representations to Plaintiff and the Class—to maintain the confidentiality, security, and integrity of their Private Information and to protect it from unauthorized access or disclosure.

5.      On December 25, 2024, an unauthorized third-party acquired certain data belonging to Defendant from a third-party platform used for software development.[2]

6.      Defendant learned about the Data Breach on April 1, 2025.[3] In response, Defendant launched a review of the impacted data to determine what

---

[1] *About Us*, LexisNexis Risk Solutions, Inc. https://risk.lexisnexis.com/about-us (last visited June 5, 2025)

[2] *Data Breach Notifications*, LexisNexis Risk Solutions, Inc. https://www.maine.gov/cgi-bin/agviewerad/ret?loc=2634 (last visited June 5, 2025).

[3] *Id.*

Private Information was compromised and to whom it belonged.[4]

7.      Upon information and belief, the following types of Private Information were compromised as a result of the Data Breach: name, contact information (such as phone number, postal or email address), Social Security number, driver's license number, and date of birth.[5]

8.      On May 24, 2025, Defendant issued a public disclosure about the Data Breach and began notifying individuals whose Private Information was impacted.[6]

9.      Defendant failed to take precautions designed to keep individuals' Private Information secure.

10.      Defendant owed Plaintiff and the Class Members a duty to take all reasonable and necessary measures to safeguard the Private Information it collected from unauthorized access. Despite soliciting, collecting, utilizing, and deriving benefit from this information, Defendant breached its duty by failing to implement and maintain adequate security measures and protocols.

11.      Defendant admits that Private Information was accessed by unauthorized individuals, though it provided little information regarding how the Data Breach occurred.

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

12.     The sensitive nature of the data exposed through the Data Breach signifies that Plaintiff and Class Members have suffered irreparable harm. Plaintiff and Class Members have lost the ability to control their private information and are subject to an increased risk of identity theft.

13.     Defendant failed to use reasonable security procedures and practice appropriate to the nature of the sensitive, unencrypted information it maintained for Plaintiff and Class Members, causing the exposure of Plaintiff's and Class Members' Private Information.

14.     As a result of Defendant's inadequate digital security and notice process, Plaintiff's and Class Members' Private Information was exposed to criminals. Plaintiff and the Class Members have suffered and will continue to suffer injuries including: financial losses caused by misuse of their Private Information; the loss or diminished value of their Private Information as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

15.     Plaintiff brings this action on behalf of all individuals whose Private Information was compromised as a result of Defendant's failure to: (i) adequately safeguard the Private Information of Plaintiff and Class Members; (ii) disclose the inadequacy of its data security practices; (iii) implement and maintain reasonable security measures to protect systems and devices containing Private Information

from vulnerabilities and unauthorized access; and (iv) provide timely and adequate notice of the Data Breach. Defendant's conduct constitutes, at a minimum, negligence and violates applicable federal and state laws.

16.     Plaintiff brings this action individually and on behalf of a Nationwide Class of similarly situated individuals against Defendant for: negligence; negligence *per se*; unjust enrichment, and breach of implied contract.

17.     Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of herself, and all similarly situated persons, whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## PARTIES

**Plaintiff:**

18.     Plaintiff Dyra Smith is a citizen and resident of Pittsburgh, Pennsylvania.

**Defendant:**

19.     Defendant LexisNexis Risk Solutions, Inc. is a risk and data management with its principal place of business at 1000 Alderman Drive, Alpharetta, Georgia 30005.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this action under the Class Action

Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is more than 100 and at least one member of the Class defined below is a citizen of a different state that is diverse from Defendant's citizenship.[78] Thus, minimal diversity exists under 28 U.S.C. § 1332 (d) (2) (A). Defendant has its principal place of business located in this District. This Court has personal jurisdiction over Defendant because Defendant is registered to do business and maintains its principal place of business in this District.

21.      Venue is proper in this Court because Defendant's principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## **FACTUAL ALLEGATIONS**

22.      Defendant is a data analytics provider that offers customers solutions to manage risk, make better decisions, and improve operations across various industries.[8] Defendant provides data and analytics services, technology, and expert guidance to help organizations address business challenges, stay compliant, and reduce risk.[9]

---

[7] *Data Breach Notifications*, LexisNexis Risk Solutions, Inc. https://www.maine.gov/cgi-bin/agviewerad/ret?loc=2634 (last visited June 5, 2025).

[8] *About Us*, LexisNexis Risk Solutions, Inc. https://risk.lexisnexis.com/about-us (last visited June 5, 2025).

[9] *Id.*

23.    Defendant made express promises and representations to individuals, including Plaintiff and Class Members, that the Private Information it collected would be kept secure and confidential, and that their privacy would be protected.

24.    Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

25.    As a result of collecting and storing the Private Information of Plaintiff and Class Members for its own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff's and the Class Members' Private Information from disclosure to third parties.

***The Data Breach***

26.    On December 25, 2024, an unauthorized third-party acquired certain data belonging to Defendant from a third-party platform used for software development.[10]

27.    Defendant learned about the Data Breach on April 1, 2025.[11]

---

[10] *Data Breach Notifications*, LexisNexis Risk Solutions, Inc. https://www.maine.gov/cgi-bin/agviewerad/ret?loc=2634 (last visited June 5, 2025).
[11] *Id.*

In response, Defendant launched a review of the impacted data to determine what Private Information was compromised and to whom it belonged.[12]

28.     The following types of Private Information were compromised as a result of the Data Breach: name, contact information (such as phone number, postal or email address), Social Security number, driver's license number, and date of birth.[13]

29.     On May 24, 2025, Defendant issued a public disclosure about the Data Breach and began notifying individuals whose Private Information was impacted.[15]

30.     Defendant failed to take precautions designed to keep individuals' Private Information secure.

31.     While Defendant sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive Private Information of Plaintiff and Class Members.

32.     Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

***Defendant's Failure to Safeguard Data and Promptly Disclose***

---

[12] *Id.*

[13] *Id.*

33.    Defendant admits that an unauthorized third party accessed Plaintiff and Class Members Private Information. Defendant failed to take adequate measures to protect individuals Private Information from unauthorized access. The Private Information that Defendant allowed to be exposed in the Data Breach is the type of private information that Defendant knew or should have known would be the target of cyberattacks.

34.    Despite its own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[14] Defendant failed to disclose that it could not reasonably safeguard individuals' Private Information.

35.    The FTC directs businesses to use an intrusion detection system to expose a breach as so as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[15] Immediate notification of a Data Breach is critical so that those impacted can take measures to protect themselves.

36.    Here, Defendant waited more than a month after being made aware of the Data Breach to notify impacted individuals.

***Present and Continuing Harm Caused by the Data Breach***

---

[14] *Protecting Personal Information: A Guide for Business,* FED. TRADE COMM'N    (Oct.    2016)*,*    https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business. (last visited June 5, 2025).
[15] *Id.*

37.     Victims of data breaches are at heightened risk of identity theft. According to the Federal Trade Commission (FTC), identity theft is defined as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201(9). When identity thieves gain access to personal information, they can engage in a range of fraudulent activities, including draining bank accounts, accumulating charges on credit cards, opening new utility accounts, or obtaining medical treatment using the victim's health insurance

38.     The type of data that may have been accessed and compromised here can be used to perpetrate fraud and identity theft.

39.     Plaintiff and Class Members face a substantial risk of identity theft given that their Private Information was compromised in the Data Breach.

40.     Stolen private information is frequently bought and sold on the "dark web"—a heavily encrypted portion of the Internet that cannot be accessed through standard search engines. The anonymity afforded by this encryption makes it extremely difficult for law enforcement to monitor or regulate activity on the dark web, enabling cybercriminals to conceal their identities and illicit transactions.

41.     When malicious actors infiltrate companies and copy and exfiltrate the Private Information that those companies store, the stolen information often ends up on the dark web where malicious actors buy and sell that information for profit.

42.     For example, when the U.S. Department of Justice announced their seizure of AlphaBay—the largest online "dark market"—in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity."[16] Marketplaces similar to the now-defunct AlphaBay continue to be "awash with [PII] belonging to victims from countries all over the world."[17]

43.     PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[18] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[19]

44.     As a result of the Data Breach, the Private Information of Plaintiff and Class Members has been exposed to criminals for misuse. The injuries suffered by Plaintiff and Class Members, or likely to be suffered as a direct result of

---

[16] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR (April 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/ (last visited June 5, 2025)
[17] *Id.*
[18] *Id.*
[19] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015) https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited June 5, 2025).

Defendant's Data Breach, include: (a) theft of their Private Information; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this Breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their Private Information against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their Private Information, which remains in the possession of Defendant, and which is subject to further injurious breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

45.    In addition to a remedy for economic harm, Plaintiff and Class Members maintain an interest in ensuring that their Private Information is secure, remains secure, and is not subject to further misappropriation and theft.

46.    Defendant disregarded the rights of Plaintiff and Class Members by (a) intentionally, willfully, recklessly, or negligently failing to take adequate and

reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (b) failing to disclose that it did not have adequately robust security protocols and training practices in place to safeguard Plaintiff's and Class Members' Private Information; (c) failing to take standard and reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (e) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

47.     The actual and adverse effects to Plaintiff and Class Members, including the imminent, immediate, and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly or proximately caused by Defendant's wrongful actions and/or inaction and the resulting Data Breach require Plaintiff and Class Members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiff and other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

*Plaintiff's Experience*

48.    Plaintiff received a notice letter from Defendant on May 24, 2025, informing her that her Private Information was compromised in the Data Breach. Exhibit A.

49.    Defendant obtained Plaintiff's Private Information with the reasonable expectation and mutual understanding that Defendant would keep her Private Information secure from unauthorized access.

50.    Defendant was in possession of Plaintiff's Private Information before, during, and after the Data Breach.

51.    In the aftermath of the Data Breach, Plaintiff undertook reasonable and diligent efforts to mitigate its impact. These efforts included researching the nature and scope of the breach, closely monitoring her financial accounts for signs of fraud, and regularly reviewing her credit reports. Plaintiff estimates that she has already spent several hours this week addressing issues related to the Data Breach.

52.    Plaintiff will be forced to spend additional time reviewing her credit reports and monitoring her accounts for the rest of her life. This is time spent, which has been lost forever and cannot be recaptured.

53.    Plaintiff places significant value in the security of her Private Information and does not readily disclose it. Plaintiff entrusted Defendant with her Private Information with the understanding that Defendant would keep her

information secure and would employ reasonable and adequate data security measures to ensure that her Private Information would not be compromised.

54.     Plaintiff has never knowingly transmitted unencrypted Private Information over the internet or any other unsecured source.

55.     As a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after her Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring her accounts and credit reports for fraudulent activity; (b) loss of privacy due to her Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of her bargain because Defendant did not adequately protect her Private Information; (d) emotional distress because identity thieves now possess her sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been stolen and published on the dark web; (f) diminution in the value of her Private Information, a form of intangible property that Defendant obtained from Plaintiff; and (g) other economic and non-economic harm.

56.     Plaintiff has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. This risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the Private Information stolen in the Data Breach.

57.     Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in the possession of Defendant, is protected, and safeguarded from future data breaches. Absent Court intervention, Plaintiff's Private Information will be wholly unprotected and at-risk of future data breaches.

## CLASS ALLEGATIONS

58.     Plaintiff brings this class action, individually and on behalf of the following Nationwide Class:

**All persons in the United States who were impacted by the Data Breach publicly announced by Defendant in May 2025 (the "Class").**

59.     Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

60.     Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

61.     This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

62.     <u>Numerosity</u>: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, upon information and belief, Plaintiff estimates that the Class is comprised of thousands of Class Members, if not more. The Class is sufficiently numerous to warrant certification.

63.     <u>Typicality of Claims</u>: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, had her Private Information compromised as a result of the Data Breach. Plaintiff is a member of the Class, and her claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff is similar to that suffered by all other Class Members which was caused by the same misconduct by Defendant.

64.     <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

65.     <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

66.     <u>Predominant Common Questions</u>: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

67.     Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

68.     Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations.

69.     Whether Defendant's storage of Plaintiff's and Class Member's Private Information was done in a negligent manner.

70.     Whether Defendant had a duty to protect and safeguard Plaintiff's and Class Members' Private Information.

71.     Whether Defendant's conduct was negligent.

72.     Whether Defendant's conduct violated Plaintiff's and Class Members' privacy.

73.     Whether Defendant's conduct violated the statutes as set forth herein.

74.     Whether Defendant took sufficient steps to secure individuals' Private Information;

75.     Whether Defendant was unjustly enriched; and

76.     The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

77.     Information concerning Defendant's policies is available from Defendant's records.

78.     Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

79.     The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

80.     Given that the Defendant had not indicated any changes to its conduct or security measures, monetary damages are insufficient and there is no

complete and adequate remedy at law.

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class)**

81.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 80 as though fully set forth herein.

82.     Plaintiff brings this claim individually and on behalf of the Class.

83.     Defendant knowingly collected, stored, and maintained Plaintiff's and Class Members' Private Information and had a duty to use reasonable care to protect it from unauthorized access, disclosure, or misuse.

84.     This duty included implementing and maintaining adequate data security measures, monitoring its own systems and those of third-party vendors, and promptly disclosing any breaches affecting the Private Information.

85.     Defendant's duty arose from multiple sources, including common law, industry standards, Section 5 of the FTC Act (15 U.S.C. § 45), and the special relationship created by collecting and storing sensitive information.

86.      Defendant breached these duties by failing to implement reasonable security practices, including:

   a.   Failing to adopt and maintain appropriate safeguards for Private Information;

   b.   Failing to monitor and audit its systems and third-party vendors;

and,

    c.  Failing to have a plan in place to detect and respond to data breaches.

87.    Defendant also failed to timely notify Plaintiff and Class Members that their information had been compromised, preventing them from taking steps to mitigate harm.

88.    Defendant's conduct violated statutory and regulatory obligations, including 15 U.S.C. § 45 and FTC guidelines, by failing to secure, encrypt, or properly dispose of sensitive data and by ignoring known cybersecurity risks.

89.    It was reasonably foreseeable that Defendant's failure to secure Private Information would result in its compromise and cause injury to Plaintiff and Class Members.

90.    As a direct result of Defendant's negligence, Plaintiff's and Class Members' Private Information was exposed and remains at risk of misuse.

91.    But for Defendant's failures, the Private Information of Plaintiff and Class Members would not have been compromised.

92.    Defendant's delayed disclosure of the breach deprived Plaintiff and Class Members of the opportunity to mitigate harm, including identity theft and fraud.

93.    As a result of Defendant's negligence, Plaintiff and Class Members face ongoing risk and harm, including identity theft, financial fraud, loss of time and

resources, emotional distress, and diminished value of services paid for but not properly secured.

## COUNT II
### NEGLIGENCE *PER SE*
### (On Behalf of Plaintiff and the Class)

94.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 80 as though fully set forth herein.

95.    Section 5 of the FTC Act, 15 U.S.C. 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information. Various FTC publications and orders also form the basis of Defendant's duty.

96.    Defendant violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information and by failing to comply with industry standards.

97.    Defendant's conduct was particularly unreasonable given the nature and amount of Private Information obtained and stored and the foreseeable consequences of a data breach.

98.    Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

99.     Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

100.    As a result of Defendant's negligence per se, Plaintiff and Class Members have been harmed and have suffered damages including, but not limited to: damages arising from identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing, and correcting the current and future consequences of the Data Breach.

### COUNT III
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

101.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 80 as though fully set forth herein.

102.    Plaintiff and Class Members conferred a benefit upon Defendant when Defendant obtained their Private Information.

103.    Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff. Defendant also benefited from the receipt of Plaintiff's and Class Members' Private Information.

104.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the Class Members' Private

105.    Information because Defendant failed to adequately protect their Private Information. Plaintiff and the proposed Class would not have provided their Private Information to Defendant had they known Defendant would not adequately protect their Private Information.

106.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it because of its misconduct and the Data Breach it caused.

## COUNT IV
## BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Class)

107.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 80 as though fully set forth herein.

108.    Defendant was entrusted with Plaintiff and Class Members Private Information as part of Defendant's regular business practices.

109.    In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen, in return for the business services provided by Defendant. Implied in these exchanges was a promise by Defendant to ensure that the Private Information of Plaintiff and Class Members in its possession was secure.

110.    Pursuant to these implied contracts, Defendant agreed to (1) take reasonable measures to protect the security and confidentiality of Plaintiff and Class Members' Private Information; and (2) protect Plaintiff and Class Members' Private Information in compliance with federal and state laws and regulations and industry standards.

111.    Implied in these exchanges was a promise by Defendant to ensure the Private Information of Plaintiff and Class Members in its possession was only used to provide the agreed-upon reasons, and that Defendant would take adequate measures to protect Plaintiff and Class Members' Private Information.

112.    A material term of this contract is a covenant by Defendant that it would take reasonable efforts to safeguard that information. Defendant breached this covenant by allowing Plaintiff and Class Members' Private Information to be accessed in the Data Breach.

113.    Indeed, implicit in the agreement between Defendant and Plaintiff and Class Members was the obligation that both parties would maintain information confidentially and securely.

114.    These exchanges constituted an agreement and meeting of the minds between the parties.

115.    When the parties entered into an agreement, mutual assent occurred. Plaintiff and Class Members would not have disclosed their Private Information to Defendant but for the prospect of utilizing Defendant services. Conversely, Defendant presumably would not have taken Plaintiff and Class Members' Private Information if it did not intend to provide Plaintiff and Class Members with its services.

116.    Defendant was therefore required to reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure and use.

117.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied contracts with Defendant and would have instead retained the opportunity to control their Private Information.

118.    Defendant breached the implied contracts with Plaintiff and Class Members by failing to reasonably safeguard and protect Plaintiff and Class Members' Private Information.

119.    Defendant's failure to implement adequate measures to protect the Private Information of Plaintiff and Class Members violated the purpose of the agreement between the parties.

120.    As a direct and proximate result of Defendant's breaches of its implied contracts with Plaintiff and Class Members, Plaintiff and Class Members have suffered damages, including those detailed above, such as the loss of the value of their Private Information, the risk of identity theft, and the time and expenses incurred to mitigate these harms.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representative of the Class and her counsel as Class Counsel.

(b)    For an order declaring that Defendant's conduct violates the laws referenced herein.

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein.

(d)    For damages in amounts to be determined by the Court and/or jury.

(e)    For an award of statutory damages or penalties to the extent available.

(f)    For pre-judgment interest on all amounts awarded.

(g)    For an order of restitution and all other forms of monetary relief; and

(h)    Such other and further relief as the Court deems necessary and appropriate.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: June 6, 2025.                              Respectfully submitted,


_/s/ J. Cameron Tribble_
J. Cameron Tribble
Georgia Bar No. 754759
**THE BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
Telephone: 770-227-6375
Facsimile:770-227-6373
E-mail: ctribble@barneslawgroup.com

Sabita J. Soneji*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
E-mail: ssoneji@tzlegal.com

*Attorneys for Plaintiff and the Proposed Class*

*\* Application for admission pro hac vice to be filed*

EXHIBIT A



**LexisNexis**
RISK SOLUTIONS

Return Mail Processing
PO Box 999
Suwanee, GA 30024

208 1 41721 ****************AUTO**ALL FOR AADC 150
DYRA L SMITH          SR

May 24, 2025

## NOTICE OF DATA BREACH

Dear Dyra L Smith          SR,

LexisNexis Risk Solutions ("LNRS") provides risk management services to business customers. We are writing to notify you of an issue that involves certain of your personal information.

### What Happened?

On April 1, 2025, we learned that on December 25, 2024, an unauthorized third party acquired certain LNRS data from a third-party platform used for software development. The issue did not affect LNRS's own networks or systems. Based on our review of the impacted data, we have determined that certain of your personal information was affected.

### What Information Was Involved?

The types of impacted personal information varied by affected individual, and could have included name, contact information (such as phone number, postal or email address), Social Security number, driver's license number or date of birth. No financial or credit card information was affected. We have no evidence that your data has been further misused.

### What We Are Doing

Upon learning of the issue, we promptly launched an investigation with the assistance of leading external cybersecurity experts, notified law enforcement and took steps to review and further enhance our security controls. We also initiated an extensive review of the impacted data to identify personal information that may have been affected.

### What You Can Do

We recommend that you remain vigilant for incidents of fraud and identity theft by reviewing your account statements and monitoring your free credit reports. If you would like to check your credit report, you are entitled under US law to one free credit report annually from each of the three nationwide consumer reporting agencies. US residents can order a free credit report by visiting www.annualcreditreport.com or calling toll-free at 1-877-322-8228. The Reference Guide below provides recommendations by the US Federal Trade Commission on the protection of personal information. We also recommend that you remain alert for unsolicited communications involving your personal information.

In addition, we have arranged to offer you identity protection and credit monitoring services for two years at no cost to you. The Reference Guide below provides information on how to activate these services.

**For More Information**
We take our obligation to safeguard personal information very seriously and regret any inconvenience this may cause you. If you have any questions regarding this issue, please call 1-833-918-9002 Monday through Friday from 9 a.m. to 9 p.m. Eastern.


Sincerely,


Elise Quadrozzi
Vice President
Consumer Operations and Compliance

## Reference Guide

We encourage you to take the following steps:

**Enroll in Complimentary Identity Protection and Credit Monitoring Services.**

To help protect your identity, we are offering complimentary access to Experian IdentityWorks℠ for 24 months.

If you believe there was fraudulent use of your information as a result of this incident and would like to discuss how you may be able to resolve those issues, please reach out to an Experian agent. If, after discussing your situation with an agent, it is determined that identity restoration support is needed then an Experian Identity Restoration agent is available to work with you to investigate and resolve each incident of fraud that occurred from the date of the incident (including, as appropriate, helping you with contacting credit grantors to dispute charges and close accounts; assisting you in placing a freeze on your credit file with the three major credit bureaus; and assisting you with contacting government agencies to help restore your identity to its proper condition).

Please note that Identity Restoration is available to you for 24 months from the date of this letter and does not require any action on your part at this time. The Terms and Conditions for this offer are located at www.ExperianIDWorks.com/restoration.

While identity restoration assistance is immediately available to you, we also encourage you to activate the fraud detection tools available through Experian IdentityWorks as a complimentary 24-month membership. This product provides you with superior identity detection and resolution of identity theft. To start monitoring your personal information, please follow the steps below:

- Ensure that you **enroll by August 31, 2025** (Your code will not work after this date.)
- **Visit** the Experian IdentityWorks website to enroll: https://www.experianidworks.com/credit
- Provide your **activation code:** ███████████

If you have questions about the product, need assistance with Identity Restoration that arose as a result of this incident, or would like an alternative to enrolling in Experian IdentityWorks online, please contact Experian's customer care team at 1-833-918-9002 by August 31, 2025. Be prepared to provide engagement number ███████ as proof of eligibility for the Identity Restoration services by Experian.

## ADDITIONAL DETAILS REGARDING YOUR 24-MONTH EXPERIAN IDENTITYWORKS MEMBERSHIP

A credit card is not required for enrollment in Experian IdentityWorks. You can contact Experian immediately regarding any fraud issues, and have access to the following features once you enroll in Experian IdentityWorks:

- **Experian credit report at signup:** See what information is associated with your credit file. Daily credit reports are available for online members only.*
- **Credit Monitoring:** Actively monitors Experian file for indicators of fraud.
- **Identity Restoration:** Identity Restoration specialists are immediately available to help you address credit and non-credit related fraud.

* Offline members will be eligible to call for additional reports quarterly after enrolling.

...agement # B146027

- **Experian IdentityWorks ExtendCARE™:** You receive the same high-level of Identity Restoration support even after your Experian IdentityWorks membership has expired.
- **$1 Million Identity Theft Insurance\*\*:** Provides coverage for certain costs and unauthorized electronic fund transfers.

**Order Your Free Credit Report.** To order your free credit report, visit www.annualcreditreport.com, call toll-free at 1-877-322-8228 or complete the Annual Credit Report Request Form on the U.S. Federal Trade Commission's ("FTC's") website at www.consumer.ftc.gov and mail it to Annual Credit Report Request Service, P.O. Box 105281, Atlanta, GA 30348-5281. The three nationwide consumer reporting agencies provide free annual credit reports only through the website, toll-free number or request form.

When you receive your credit report, please review it carefully. Look for accounts you did not open. Look in the "inquiries" section for names of creditors from whom you haven't requested credit. Some companies bill under names other than their store or commercial names. The consumer reporting agency will be able to tell you when that is the case. Look in the "personal information" section for any inaccuracies in your information (such as home address and Social Security number). If you see anything you do not understand, *call the consumer reporting agency at the telephone number on the report.* Errors in this information may be a warning sign of possible identity theft. You should notify the consumer reporting agencies of any inaccuracies in your report, whether due to error or fraud, as soon as possible so the information can be investigated and, if found to be in error, corrected. If there are accounts or charges you did not authorize, immediately notify the appropriate consumer reporting agency by telephone and in writing. Consumer reporting agency staff will review your report with you. If the information cannot be explained, then you will need to call the creditors involved. Information that cannot be explained also should be reported to your local police or sheriff's office because it may signal criminal activity.

**Report Incidents.** If you detect any unauthorized transactions in a financial account, promptly notify your payment card company or financial institution. If you are in the US and detect any incident of identity theft or fraud, promptly report the incident to law enforcement, the FTC and your state Attorney General. If you believe your identity has been stolen, the FTC recommends that you take these steps:

- Close the accounts that you have confirmed or believe have been tampered with or opened fraudulently. For more information, please visit https://www.identitytheft.gov/.
- File a local police report. Obtain a copy of the police report and submit it to your creditors and any others that may require proof of the identity theft crime.

You can contact the FTC to learn more about how to protect yourself from becoming a victim of *identity* theft and how to repair identity theft:

*Federal Trade Commission*
*Consumer Response Center*
*600 Pennsylvania Avenue, NW*
*Washington, DC 20580 1-877-IDTHEFT (438-4338)*
*www.ftc.gov/idtheft/*

*\*\* The Identity Theft Insurance is underwritten and administered by American Bankers Insurance Company of Florida, an Assurant company. Please refer to the actual policies for terms, conditions, and exclusions of coverage. Coverage may not be available in all jurisdictions.*

**Consider Placing a Fraud Alert on Your Credit File.** To protect yourself from possible identity theft, consider placing a fraud alert on your credit file. A fraud alert helps protect you against the possibility of an identity thief opening new credit accounts in your name. When a merchant checks the credit history of someone applying for credit, the merchant gets a notice that the applicant may be the victim of identity theft. The alert notifies the merchant to take steps to verify the identity of the applicant. You can place a fraud alert on your credit report by calling any one of the toll-free numbers provided below. You will reach an automated telephone system that allows you to flag your file with a fraud alert at all three consumer reporting agencies. For more information on fraud alerts, you also may contact the FTC as described above.

| Equifax | Experian | TransUnion |
|---|---|---|
| Equifax Information Services LLC | Experian Inc. | TransUnion LLC |
| P.O. Box 105069 | P.O. Box 9554 | P.O. Box 2000 |
| Atlanta, GA 30348-5069 | Allen, TX 75013 | Chester, PA 19016 |
| 1-888-836-6351 | 1-888-397-3742 | 1-800-680-7289 |
| www.equifax.com | www.experian.com | www.transunion.com |

**Consider Placing a Security Freeze on Your Credit File.** You may wish to place a "security freeze" (also known as a "credit freeze") on your credit file. A security freeze is designed to prevent potential creditors from accessing your credit file at the consumer reporting agencies without your consent. Unlike a fraud alert, you must place a security freeze on your credit file at each consumer reporting agency individually. There is no charge to place or lift a security freeze. For more information on security freezes, you may contact the three nationwide consumer reporting agencies or the FTC as described above. As the instructions for establishing a security freeze differ from state to state, please contact the three nationwide consumer reporting agencies to find out more information.

The consumer reporting agencies may require proper identification prior to honoring your request. For example, you may be asked to provide:

- Your full name with middle initial and generation (such as Jr., Sr., II, III)
- Your Social Security number
- Your date of birth
- Addresses where you have lived over the past five years
- A legible copy of a government-issued identification card (such as a state driver's license or military ID card)
- Proof of your current residential address (such as a current utility bill or account statement)

**For Iowa Residents.** You may contact law enforcement or the Iowa Attorney General's Office to report suspected incidents of identity theft. This office can be reached at:

Office of the Attorney General of Iowa
Hoover State Office Building
1305 E. Walnut Street
Des Moines, IA 50319
(515) 281-5164
www.iowaattorneygeneral.gov

**For Maryland Residents.** You can obtain information from the Maryland Office of the Attorney General about steps you can take to avoid identity theft. You may contact the Maryland Attorney General at:

Maryland Office of the Attorney General
Consumer Protection Division
200 St. Paul Place
Baltimore, MD 21202
(888) 743-0023 (toll-free in Maryland)
(410) 576-6300
www.marylandattorneygeneral.gov

**For Massachusetts Residents.** You have the right to obtain a police report and request a security freeze as described above. The consumer reporting agencies may require that you provide certain personal information (such as your name, Social Security number, date of birth and address) and proper identification (such as a copy of a government-issued ID card and a bill or statement) prior to honoring your request to place a security freeze on your account.

**For New Mexico Residents.** You have rights under the federal Fair Credit Reporting Act ("FCRA"). These include, among others, the right to know what is in your file; to dispute incomplete or inaccurate information; and to have consumer reporting agencies correct or delete inaccurate, incomplete, or unverifiable information. For more information about the FCRA, please visit https://files.consumerfinance.gov/f/201504_cfpb_summary_your-rights-under-fcra.pdf or www.ftc.gov.

**For New York Residents.** You can obtain information from the New York State Office of the Attorney General about how to protect yourself from identity theft and tips on how to protect your privacy online. You can contact the New York State Office of the Attorney General at:

Office of the Attorney General
The Capitol
Albany, NY 12224-0341
1-800-771-7755 (toll-free)
1-800-788-9898 (TDD/TTY toll-free line)
https://ag.ny.gov/

Bureau of Internet and Technology ("BIT")
28 Liberty Street
New York, NY 10005
(212) 416-8433
https://ag.ny.gov/resources/individuals/consumer-issues/technology

**For North Carolina Residents.** You can obtain information from the North Carolina Attorney General's Office about preventing identity theft. You can contact the North Carolina Attorney General at:

North Carolina Attorney General's Office
9001 Mail Service Center
Raleigh, NC 27699-9001
(877) 566-7226 (toll-free in North Carolina)
(919) 716-6400
www.ncdoj.gov

**For Oregon Residents.** We encourage you to report suspected identity theft to the Oregon Attorney General at:

Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(877) 877-9392 (toll-free in Oregon)
(503) 378-4400
www.doj.state.or.us

**For Rhode Island Residents.** You may obtain information about preventing and avoiding identity theft from the Rhode Island Office of the Attorney General at:

Rhode Island Office of the Attorney General
Consumer Protection Unit
150 South Main Street
Providence, RI 02903
(401)274-4400
www.riag.ri.gov

You have the right to obtain a police report and request a security freeze as described above. The consumer reporting agencies may require that you provide certain personal information (such as your name, Social Security number, date of birth, and address) and proper identification (such as a copy of a government-issued ID card and a bill or statement) prior to honoring your request for a security freeze on your account.

**For Washington, D.C. Residents.** You may obtain information about preventing and avoiding identity theft from the Office of the Attorney General for the District of Columbia at:

Office of the Attorney General for the District of Columbia
400 6th Street NW
Washington, D.C. 20001
(202)727-3400
www.oag.dc.gov